IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBETTA S. JOHNSTON and GEORGIA THOMAS-MARSHALL, f/k/a Georgia Thomas, individually and on behalf of a class, <br><br> Plaintiffs, <br><br> v. <br><br> ARROW FINANCIAL SERVICES, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.  06 C 0013 <br> ) <br> ) Judge Robert W. Gettleman <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Robetta S. Johnston and Georgia Thomas-Marshall, individually and on behalf of a putative class, filed an amended complaint against defendant Arrow Financial Services, LLC ("Arrow"), alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Plaintiffs claim that defendant misrepresented its identity when it sent debt collection letters purporting to be from Capital One, a company with whom plaintiffs held credit accounts. Defendants moved to stay and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Plaintiffs moved to strike the declaration of Matthew Sharp, to which defendants attached the arbitration agreements supporting defendant's motion to compel arbitration. For the reasons set out below, the court denies plaintiffs' motion to strike the declaration and grants defendant's motion to compel arbitration.

**FACTS**

Plaintiff Robetta Johnston opened a credit card account with Capital One Bank on April 9, 2002. Capital One credit card accounts are governed by a Customer Agreement. This agreement contains an arbitration clause which states in relevant part:

> You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.
>
> "We,""us" and "our" mean the owner of your account (Capital One Bank or Capital One, F.S.B.), its parent, and their direct and indirect subsidiaries and affiliates, as well as all of their respective employees, officers, directors, licensees, predecessors, successors, and assigns.
>
> "Claim" means any claim, controversy, or dispute of any kind or nature between you and us. This definition includes, without limitation, any Claim that in any way arises from or relates to:...any billing or collections matters relating to your account.
>
> This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act (the "FAA").

Capital One's policy at the time Ms. Johnston opened her account was to mail both the credit card itself and the Customer Agreement to the address provided by the customer.[1] Although Ms. Johnston does not recall receiving a copy of the Customer Agreement, she did receive her credit card at the address she provided to Capital One, which she has used on numerous occasions since April 9, 2002. Capital One's records do not indicate that the Customer Agreement was returned to Capital One as undeliverable.

---

[1] Defendant acknowledges that Capital One uses an independent contractor to mail documents to its customers. This contractor acts on behalf of Capital One and is not affiliated with defendant.

Plaintiff Georgia Thomas-Marshall opened a credit card account with Capital One on September 23, 1999. Capital One's policy at the time Ms. Thomas-Marshall opened her account was to mail both the credit card itself and a Customer Agreement to the address provided by the customer. At that time, Customer Agreements did not contain an arbitration provision. Ms. Thomas-Marshall does not recall receiving a Customer Agreement, but she admits that she threw away all documents regarding her Capital One account shortly after receiving them. Ms. Thomas-Marshall did, however, receive her credit card at the address she provided to Capital One, which she has used on numerous occasions since September 23, 1999. Capital One's records do not indicate that the Customer Agreement was returned to Capital One as undeliverable.

On October 30, 2001, Capital One sent Ms. Thomas-Marshall an amendment to her original Customer Agreement. The amendment contained an arbitration clause identical to the one contained in Ms. Johnston's account. The amendment also provided an opt-out coupon to be filled out by Ms. Thomas-Marshall if she did not agree to the arbitration clause. Ms. Thomas-Marshall never returned the arbitration coupon or otherwise opted out of the arbitration agreement, which became effective on January 31, 2002. Ms. Thomas-Marshall does not recall receiving the amendment and arbitration coupon, but Capital One's records indicate that the company sent the documents to the address provided by Ms. Thomas-Marshall when she opened her account (and the same address to which Capital One sent Ms. Thomas-Marshall's credit card). Capital One's records do not indicate that the amended Customer Agreement, containing the arbitration clause and the opt-out coupon, was returned to Capital One as undeliverable. Ms. Thomas-Marshall continued to use her credit card after January 31, 2002.

Both plaintiffs ultimately defaulted under the terms of their Customer Agreements, and Capital One retained defendant, a debt collection service, to assist in collecting the debts owed by plaintiffs. Plaintiffs received letters on Capital One letterhead; the letters indicated that plaintiffs should contact defendant to resolve debt disputes. Ms. Johnston's letter included a footnote stating that should Capital One cancel or forgive more than $600 of debt, she must include the canceled debt as income on her tax returns.

Plaintiffs claim that defendant itself sent these debt collection letters, purporting to act as Capital One by using Capital One letterhead and the names of Capital One employees. Plaintiffs maintain that such misrepresentation constitutes a violation of the FDCPA because it constitutes the use of a name other than defendant's true business name to induce customers to call defendant. Plaintiffs also maintain that a cancelled or forgiven debt does not constitute income for the purpose of tax returns.

Defendant maintains that Capital One itself sent the letters after retaining defendant to assist with debt collection. Defendant claims that it has not violated the FDCPA because it did not send letters to plaintiffs; rather, Capital One sent the letters and provided contact information for defendant. Further, defendant maintains that such a dispute must be resolved through arbitration as required by the arbitration clause contained in each Customer Agreement. Capital One has agreed to defend and indemnify defendant in this matter.

## **DISCUSSION**

<u>Plaintiffs' Motion to Strike the Declaration of Matthew Sharp</u>

The court will first consider plaintiffs' motion to strike the declaration of Matthew Sharp, to which defendant attached copies of the Customer Agreements at the heart of this dispute.

Matthew Sharp, an Executive Assistant for Capital One Services, Inc., asserted in his declaration that plaintiffs opened and used credit card accounts with Capital One. He also stated that Capital One's policy was to mail credit cards and Customer Agreements to every customer. Mr. Sharp indicated that according to company records, neither agreement was returned to Capital One as undeliverable.

Plaintiffs have asked the court to strike Mr. Sharp's declaration based on lack of personal knowledge. Plaintiffs claim that Mr. Sharp's deposition testimony demonstrates that he is not sufficiently familiar with Capital One's policies and procedures to make the statements in his declaration. Plaintiffs argue that Mr. Sharp lacks personal knowledge because he: 1) does not know how Capital One enforces its record-keeping policies throughout the entire company; 2) does not know the official name of Capital One's policy of sending Customer Agreements to each cardholder; 3) does not know which specific individuals at Capital One are responsible for receiving returned mail; and 4) did not type his own declaration.

Plaintiffs' arguments as to Mr. Sharp's lack of personal knowledge are baseless. Mr. Sharp stated in his declaration that as Executive Assistant he is familiar with Capital One's policies and procedures for the maintenance of business records. Further, he personally reviewed the accounts of both Ms. Johnston and Ms. Thomas-Marshall and Capital One's records concerning documents sent to plaintiffs, including the Customer Agreements. Mr. Sharp is therefore competent to make statements concerning plaintiffs' accounts. Because Mr. Sharp has sufficient personal knowledge to make the assertions contained in his declaration, the court denies plaintiffs' motion.

Defendant's Motion to Compel Arbitration

Defendant filed a motion to compel plaintiffs to arbitrate their claims with Capital One. Defendant argues that plaintiffs' accounts with Capital One are subject to a Customer Agreement containing a mandatory arbitration clause. Plaintiffs maintain that: 1) they are not bound by the arbitration clause in the Customer Agreement; and 2) their dispute is with defendant, not Capital One, and therefore not covered by the arbitration clause.

The FAA provides that an arbitration clause in a "contract evidencing a transaction involving commerce...shall be valid, irrevocable, and enforceable save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. This court has little discretion in this area of law; the FAA mandates that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). According to the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus, once it is clear that the parties have a contract for arbitration of issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration. Miller v. Flume, 139 F.3d 1130, 1136 (7th Cir. 1998).

The touchstone of a motion to compel arbitration is a valid arbitration agreement. Whisler v. H.J. Meyers & Co., Inc., 948 F.Supp. 798, 800 (N.D. Ill. 1996). Plaintiffs allege that no valid arbitration agreement exists because they did not receive copies of the Customer Agreement. Defendant asserts that Capital One had a policy of mailing both credit cards and Customer Agreements to the same address, and both plaintiffs received and used their credit

cards. Capital One has no record of Customer Agreements being returned as undeliverable. The fact that a party mails a document creates a rebuttable presumption that the addressee actually received the mailing. Hagner v. United States, 285 U.S. 427, 430 (1932). Further, a party need not show conclusively that a document was placed in the mail; a custom or policy of mailing creates a presumption that such mailing occurred. In re Longardner & Associates, Inc., 855 F.2d 455 (1988).

Plaintiffs have presented no evidence to rebut the presumption that they received the Customer Agreements sent by Capital One. In fact, plaintiffs do not actually dispute that Capital One may have sent these documents; they simply "do not recall" receiving them (indeed, in Ms. Thomas-Marshall's case, she might have simply thrown the document in the garbage). Such evidence is simply not sufficient to rebut the presumption that Capital One mailed Customer Agreements containing valid arbitration clauses.

Plaintiffs attempt to bolster their argument with other cases in which Capital One customers were not bound by an arbitration agreement. Plaintiffs have not demonstrated that these cases have any bearing on the instant complaint. The fact that Capital One pursued litigation in other matters involving other Capital One customers does not show that Capital One did not have a policy of sending Customer Agreements containing arbitration clauses to their credit card holders. Plaintiffs do not even demonstrate that these other cases involve Capital One credit card holders; indeed, plaintiffs' main example, in which plaintiffs claim that Capital One alleged the existence of an arbitration agreement in federal court, but not in state court, involves Capital One Auto Finance. Plaintiffs allegations are simply irrelevant. Defendants have

demonstrated sufficiently that a valid arbitration agreement exists based on the Customer Agreement governing plaintiffs' credit card accounts.

The existence of a valid arbitration agreement is not itself enough to direct parties to arbitrate a dispute. For the court to compel arbitration it must find that the agreement covers the dispute at issue. In this case, the Capital One Customer Agreement defines a "claim" as including issues related to "any billing or collection matters." Plaintiffs' complaint is based on letters to collect on debts owed by plaintiffs to Capital One. Such a matter most certainly falls within the category of "billing and collection matters." Further, the arbitration clause found in the Customer Agreement contains a provision requiring arbitration of all claims "of any nature" regarding a credit card holder's account or relationship with Capital One. This catch-all provision includes debt collection and cancellation, the subject matter of plaintiffs' complaint. Plaintiffs are therefore bound by the arbitration agreement as to the dispute raised in their complaint.

Plaintiffs also allege that they are not bound by the arbitration agreement because their dispute is with defendant, not Capital One. They argue that if they are bound by an arbitration agreement, it does not extend to any matters involving non-signatories to the Customer Agreement.

As a preliminary matter, plaintiffs have provided no evidence that the letters they received from Capital One were actually from defendant. The mere fact that the letters include contact information for defendant in connection with debt cancellation simply does not prove that defendant itself sent the letters, rather than Capital One. Indeed, although plaintiffs allege violations of the FDCPA by defendant, plaintiffs reference in their own complaint that defendant

"either sent (debt collection letters to plaintiffs), or entered into a contract that provided for their mailing" and that defendant "necessarily knew in advance that (debt collection letters to plaintiffs) would be sent and consented to its [sic] sending." These allegations effectively recognize that defendant acted together with Capital One, rather than alone, in the sending of debt collection letters to plaintiffs. Further, William Horowitz, Vice President of Capital One, in a deposition taken by plaintiffs in connection with the instant motion, confirmed that the letters received by plaintiffs were not sent by defendant, but by Capital One "as part of [their] direct mail program."[2] Plaintiffs' claim, therefore, is based on the conduct of Capital One, a signatory to the arbitration agreement.

Even assuming that defendant was involved in the sending of debt collection letters to plaintiffs, plaintiffs must still arbitrate their dispute based on the arbitration clause. The fact that defendant is not a signatory to the Customer Agreement containing the arbitration clause does not defeat defendant's right to compel arbitration. As this court has held, an agreement containing an arbitration clause covers non-signatories under principles of equitable estoppel. Hoffman v. Deloitte & Touche, LLP, 143 F.Supp.2d 995, 1004 (N.D. Ill. 2001), quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999). These principles apply "when the signatory raises allegations of...substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Id. When a plaintiff alleges such interdependent or concerted misconduct by a signatory and a non-

---

[2]In support of his statement that Capital One sent the letters to plaintiff, Mr. Horowitz testified that Capital One conducts a monthly analysis of accounts in default, determines which account holders should receive notices, and pays to have these notices sent to customers in default. Only Capital One conducts these analyses; debt collection agencies such as defendant may not request to have notices sent to account holders.

9

signatory, "that signatory, in essence, becomes a party, with resulting loss, <u>inter alia</u>, of time and money because of its required participation in the proceeding." <u>Grigson v. Creative Artists Agency LLC</u>, 210 F.3d 524, 527 (5th Cir. 2000).

In the instant case, despite their protestations that they have a claim only against defendant, plaintiffs do in fact allege interdependent or concerted misconduct by defendant and Capital One. As discussed above, plaintiffs allege in their complaint that defendant and Capital One acted together when defendant sent letters to Capital One customers on Capital One letterhead with the intention of inducing those customers to call defendant (an allegation taht appears to be at odds with the evidence adduced by plaintiffs' own discovery). Plaintiffs state in their complaint that defendant "knew that (letters to plaintiffs) would be sent and consented to its [sic] sending." In the alternative, plaintiffs allege that if Capital One itself sent the letters, defendant was complicit in the sending of those letters by allowing Capital One to use defendant's phone number and contact information in connection with debt collection for Capital One accounts. Such alleged action is indicative of a relationship between defendant and Capital One that is "so obviously intertwined that only by allowing the non-signator[y] to invoke arbitration would evisceration of the [arbitration agreement] be avoided." <u>Hoffman</u>, 143 F.Supp.2d at 1005.

Finally, if there is any doubt as to whether plaintiffs' claims fall within the mandatory arbitration clause of the Customer Agreement, the court must resolve such doubt in favor of arbitration. <u>Moses H. Cone</u>, 460 U.S. at 24-25. The court therefore, grants defendant's motion to compel arbitration of plaintiffs' claims.

## **CONCLUSION**

For the reasons set forth above, the court denies plaintiffs' motion to strike the declaration of Matthew Sharp and grants defendant's motion to compel arbitration and stays this action until the parties have arbitrated their dispute. This matter is therefore stayed and set for a report on status on February 14, 2007, at 9:00 am.
.

**ENTER:** September 15, 2006

_____
**Robert W. Gettleman
United States District Judge**